# United States Court of Appeals for the Federal Circuit

---

**BRUCE R. TAYLOR,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2019-2211

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 17-2390, Judge Joseph L. Falvey Jr., Judge William S. Greenberg, Judge Amanda L. Meredith.

---

Decided: June 30, 2021

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

WILLIAM JAMES GRIMALDI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR., LOREN MISHA PREHEIM; CHRISTOPHER O. ADELOYE, BRIAN D. GRIFFIN, Office of General Counsel,

United States Department of Veterans Affairs, Washington, DC.

———————————

Before NEWMAN, O'MALLEY, and WALLACH[*],
*Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant, Bruce R. Taylor, appeals a decision of the U.S. Court of Appeals for Veterans Claims ("Veterans Court"). The Veterans Court affirmed the Board of Veterans Claims' ("Board") denial of entitlement to an effective date earlier than February 28, 2007, for the award of service-connected disability benefits for post-traumatic stress disorder ("PTSD"), concluding that equitable estoppel against the Government was unavailable to Mr. Taylor. *Taylor v. Wilkie* (*Taylor IV*), 31 Vet. App. 147, 154–55 (2019); J.A. 20 (Judgment).

Mr. Taylor appeals. We have jurisdiction pursuant to 38 U.S.C. §§ 7292(a), (c). We reverse and remand.

BACKGROUND

I. Factual Background[1]

From 1955 to 1975, the Department of Defense ("DoD") undertook "experiments . . . with a wide range of . . . chemical warfare agents" at various "military facilities," including Edgewood Arsenal in Edgewood, Maryland. J.A. 34; *see* J.A. 34–37 (August 2006 U.S. Department of Veterans Affairs ("VA") Information Letter). The "experiments

———————————

[*]    Circuit Judge Evan J. Wallach assumed senior status on May 31, 2021.

[1]    Because the parties do not dispute the relevant facts, *see generally* Appellant's Br. 2–6; Appellee's Br. 3–5, we cite to the Veterans Court's decisions below unless otherwise noted.

involved at least 6,700 'soldier volunteers' exposed . . . to more than 250 different [chemical warfare] agents." J.A. 35.  Mr. Taylor was among those soldier volunteers. *Taylor v. Shinseki* (*Taylor II*), No. 11-0254, 2013 WL 3283487, at *1 (Vet. App. June 28, 2013).

Mr. Taylor served on active duty in the U.S. Army from January 1969 through September 1971.  J.A. 28 (DD-214). He was "an ammunition records clerk in Vietnam" and volunteered to "participa[te] in the testing of chemical and biological warfare agents as part of the Edgewood [Arsenal] testing project."  *Taylor II*, 2013 WL 3283487, at *1; *see* J.A. 31 (Edgewood Arsenal Consent Form).  In August 1969, upon reporting to Edgewood Arsenal, Mr. Taylor signed two documents. *Taylor II*, 2013 WL 3283487, at *1.  First, he signed a secrecy oath providing that he would

> not divulge or make available any information related to U.S. Army Intelligence Center interest or participation in the Army Medical Research Volunteer Program to any individual, nation, organization, business, association, or other group or entity, not officially authorized to receive such information.

S. REP. NO. 94-755, at 418 (1976).  The secrecy oath further provided that Mr. Taylor

> [u]nderst[oo]d that any action contrary to the provisions of this statement w[ould] render [him] liable to punishment under the provisions of the Uniform Code of Military Justice [("UCMJ")].

*Id.*; *see* 10 U.S.C. §§ 801–946 (codifying the UCMJ).[2]  Second, he signed "a document regarding consent," which

---

[2]    The Central Intelligence Agency ("CIA") "has never provided any of the oaths taken by the soldiers at Edgewood Arsenal." *Taylor IV*, 31 Vet. App. at 156 (Greenberg,

provided that "[t]he proposed experimental procedure ha[d] been explained to [him]" and that "[he] voluntarily agree[d] to participate in th[e] test." J.A. 31 (Edgewood Arsenal Consent Form).[3]

---

J., dissenting) (citation omitted); *see Taylor IV*, 31 Vet. App. at 149 ("[T]here [is no] dispute that [Mr. Taylor] signed an oath vowing not to disclose his participation in or any information about the study, under penalty of court martial or prosecution[.]"); Appellee's Br. 3 n.1 (stating that, "[a]lthough the Veterans Court did not identify the document Mr. Taylor signed," a "sample volunteer agreement" was quoted by the U.S. Senate Select Committee on Intelligence "in a 1976 report" (citing S. REP. No. 94-755 at 418)).

[3] The Government was authorized to test chemical and biological weapons on human subjects pursuant to specific DoD directives and regulations "intended to govern th[e] experiments" and protect the human test subjects. *Vietnam Veterans of Am. v. Cent. Intel. Agency* (*Vietnam Veterans I*), No. C 09-0037 CW, 2013 WL 6092031, at *2 (N.D. Cal. Nov. 19, 2013), *aff'd in part, rev'd in part*, 811 F.3d 1068 (9th Cir. 2016). "These requirements were codified in [Army Regulation ('AR') 70-25, Use of Volunteers as Subjects of Research (1962) ('AR 70–25')]," first "promulgated on March 26, 1962[,] and later reissued in 1974." *Id.*; *see id.* at 3 ("Both versions set forth certain basic principles that must be observed to satisfy moral, ethical, and legal concepts." (internal quotation marks, alterations, and citations omitted)). In addition to requiring consent of the soldier volunteers, AR 70–25 established the Army's "[d]uty to warn," specifically, that "Commanders . . . ensure that research volunteers are adequately informed concerning the risks involved with their participation" and "provide them with any newly acquired information that may affect their well-being when that information becomes

In September and October 1969, Mr. Taylor was exposed to EA–3580 (a nerve agent akin to VX and sarin), EA–3547 (also called CR, a tear gas agent), and other chemical agents. *See Taylor II*, 2013 WL 3283487, at *1, *1 n.2, *1 n.3; *see* J.A. 31 (Volunteer Reports for September and October 1969) (noting that "[s]ixteen volunteers were used in testing the effects of a chemical agent," "EA 3580A," "on performance").[4] Mr. Taylor "recalled being on the rifle

---

available . . . even after the individual volunteer has completed his or her participation in research," *Vietnam Veterans of Am. v. Cent. Intel. Agency* (*Vietnam Veterans II*), 811 F.3d 1068, 1076 (9th Cir. 2016) (quoting AR 70–25), and the Army's "[d]uty to provide care," specifically to provide "medical care for disabilities, injuries or illnesses caused by their participation in government experiments, not only during the course of the experiment but also after the experiment has ended," *id.* at 1081.

[4]     EA–3580 is an anticholinergic glycolic acid ester. *Taylor II*, 2013 WL 3283487, at *1, *1 n.2; *see id.* at *1 n.2 ("Anticholinergics include nerve agents such as sarin and[] cause toxic accumulation of the neurotransmitter acetylcholine." (internal quotation marks and citation omitted)). Exposure may result in symptoms "consistent with acute cholinergic toxicity, including dizziness, frontal headache, blurred vision, lethargy, nausea, stomach pain, vomiting, rhinorrhea, chest tightness, wheezing, fasciculations, sweating on hands and feet, and significantly decreased red blood cell cholinesterase levels." *Id.*; *see also* Evan J. Wallach, *A Tiny Problem with Huge Implications—Nanotech Agents As Enablers or Substitutes for Banned Chemical Weapons: Is A New Treaty Needed?*, 33 Fordham Int'l L.J. 858, 869 n.42 (2010) (discussing the physiological effects of anticholinergic nerve agents); *id.* at 870 n.45 (discussing the production and classification of weaponized nerve agents), 888–923 (outlining the history of use of nerve agents as chemical weapons). EA–3547 "is a tear gas

range at one point and thinking that he was killing people rather than shooting at targets" and "being exposed to some agent in a gas chamber while wearing a mask and having to give only his name, rank and serial number." J.A. 57 (VA Initial Evaluation for PTSD); *see* J.A. 31 (Volunteer Reports for September and October 1969) (noting that, while exposed to EA–3580, "[m]easures of military performance and laboratory cognitive and psychomotor skills were employed," including "[n]umber [f]acility and [r]ifle [a]ccuracy," with "considerable · variation [in effect] among subjects"). Mr. Taylor reported experiencing "hallucinations, nausea, jumpiness, irritability, sleepiness, dizziness, impaired coordination, and difficulty concentrating." *Taylor IV*, 31 Vet. App. at 155 (Greenberg, J., dissenting); *see Taylor II*, 2013 WL 3283487, at *1; J.A. 56–57 (VA Initial Evaluation for PTSD).

Thereafter, Mr. Taylor returned to his unit and, in December 1969, was deployed to Vietnam. *Taylor II*, 2013 WL 3283487, at *1. Mr. Taylor "served two combat tours in Vietnam." *Id.* At the time, by its own regulation, the Army was required to provide necessary "medical treatment and hospitalization . . . for all casualties" of the Edgewood Arsenal testing program. *Vietnam Veterans II*, 811 F.3d at 1073 (quoting AR 70–25). Nonetheless, "[t]he secrecy of the Edgewood [Arsenal] testing project prevented [Mr. Taylor] from obtaining psychiatric help on multiple occasions during service, and from showing mitigating or extenuating circumstances during a court-martial for his behavior." *Taylor II*, 2013 WL 3283487, at *1 (citation omitted); *see* J.A. 45–47 (Statement in Support of Claim); *cf. Vietnam*

---

agent that causes respirator[y] tract irritation . . . with choking, and sometimes dyspnea, and stinging and eryth[em]a at the exposure site." *Taylor II*, 2013 WL 3283487, at *1 n.3 (internal quotation marks and citation omitted).

*Veterans II*, 811 F.3d at 1081 (noting the Army's ongoing "[d]uty to provide [medical] care" "for disabilities, injuries or illnesses caused by . . . participation in government experiments"); S. REP. NO. 94-885, at 4 (1976) (finding that, at Edgewood Arsenal and in other such testing programs, "medical supervision was inadequate, medical backup was deficient, and long-term follow[-]up virtually nonexistent," supporting the adoption of federal standards for the protection of human subjects of biomedical research).

## II. Procedural Background

In 2006, the DoD "declassified the names of the servicemen and women who had volunteered for the Edgewood [Arsenal testing p]rogram[.]" *Taylor IV*, 31 Vet. App. at 149. In June 2006, the VA sent letters to Edgewood Arsenal testing program participants, including Mr. Taylor, notifying them that the "DoD had given permission for those identified to disclose to health care providers information about their involvement in the Edgewood [Arsenal testing p]rogram that affected their health," *id.*; *see* J.A. 32–33 (June 2006 VA Letter), and that participants should "speak to a VA representative about filing a disability claim" for any "chronic health problems as a result of [the Edgewood Arsenal] tests," J.A. 33; *see Taylor IV*, 31 Vet. App. at 149. "In August and September 2006, [the] VA sent training letters to the Veterans Health Administration and the regional offices . . . outlining the procedures for handling claims filed by Edgewood [Arsenal testing p]rogram veterans." *Taylor IV*, 31 Vet. App. at 149; *see* J.A. 34–37 (August 2006 VA Information Letter).[5]

---

[5]    Subsequently, in 2011, the DoD issued its own memorandum "releasing veterans in part or in full from secrecy oaths that they may have taken in conjunction with [Edgewood Arsenal] testing." *Vietnam Veterans I*, 2013 WL 6092031, at *6. The memorandum noted that "[s]uch oaths

In February 2007, Mr. Taylor filed a claim for service-connected benefits for PTSD, which he asserted was "caused in service in 1969 at the chemical research program at Edgewood Arsenal[.]"   J.A. 38 (February 2007 Claim); *see Taylor IV*, 31 Vet. App. at 149.  In June 2007, a VA medical examiner diagnosed Mr. Taylor with PTSD and major depressive disorder, with "[b]oth diagnoses . . . considered to be a cumulative response to his participation as a human subject in the Edgewood Arsenal experiments and subsequent re-traumatization in Vietnam." J.A. 62 (VA Initial Evaluation for PTSD); *see Taylor IV*, 31 Vet. App. at 157 (Greenberg, J., dissenting).  The examiner noted that, while Mr. Taylor had previously sought treatment for his PTSD, he was "'turned away because the treating provider believed his story about being an experimental subject was a fabrication.'"  *Id.* at 150 (quoting J.A. 58 (VA Initial Evaluation for PTSD)); *see* J.A. 62 (VA Initial Evaluation for PTSD) (indicating that Mr. Taylor "experienced unusual physical and psychological problems but there was no help available to him due to the secret status of the [Edgewood Arsenal] research," that he was "forbidden to talk about his experiences," and that "[o]n the one occasion he did seek help, he was treated as a liar and malingerer").  He also noted that, following discharge, Mr. Taylor had experienced continuing physical and psychological problems.

---

or other non-disclosure requirements have reportedly inhibited veterans from discussing health concerns with their doctors or seeking compensation from the [VA] for potential service-related disabilities," and provided that, "[t]o assist veterans seeking care for health concerns related to their military service, chemical or biological agent research volunteers are hereby released from non-disclosure restrictions, including secrecy oaths, which may have been placed on them." *Id.*

*See Taylor II*, 2013 WL 3283487, at \*2; *see also* J.A. 62 (VA Initial Evaluation for PTSD).

In July 2007, the VA granted Mr. Taylor's claim for service-connected benefits for PTSD, with a 70 percent disability rating and, in October 2007, granted him entitlement to total disability rating based on individual unemployability ("TDIU"), both with an effective date of February 28, 2007, the date of his PTSD claim. J.A. 38 (February 2007 Claim), 64 (July 2007 Rating Decision), 73 (October 2007 Rating Decision). Mr. Taylor appealed the VA's Rating Decisions to the Board, "request[ing] an effective date of September 7, 1971, the day following [his] discharge from active duty military service," for the "grant of service connection for [PTSD] and total disability benefits[.]" J.A. 77–78 (Notice of Disagreement). Mr. Taylor "argue[d] that entitlement arose on September 7, 1971," but that he "was precluded from obtaining benefits because the . . . Government withheld necessary supporting evidence due to secrecy issues related to the Edgewood Arsenal experiments." J.A. 78. Before the Board, he "asserted that he could not file for VA benefits until he received the letter from [the] VA in September 2006 regarding the Edgewood [Arsenal] project." *In re Taylor* (*Taylor I*), No. 08-13 206, slip op. at 3 (Bd. Vet. App. July 20, 2010). The Board concluded that "the earliest effective date assignable for grant of service connection" was February 28, 2007. *Id.* The Board explained that, because "[r]eview of the evidence show[ed] that [the] VA received an informal claim for service connection for PTSD on February 28, 2007," with "no prior communication" that could be construed as a claim, February 28, 2007, was the "earliest effective date assignable[.]" *Id.* at 3–4 (citing 38 U.S.C. § 5110; 38 C.F.R. § 3.400).

Mr. Taylor appealed the Board's decision to the Veterans Court. J.A. 114 (November 2012 Complaint). The Veterans Court vacated and remanded, instructing the Board to "obtain and account for the language of the secrecy oath

in adjudicating [Mr. Taylor's] claim." *Taylor II*, 2013 WL 3283487, at \*2. The Board remanded to the VA, *In re Taylor* (*Taylor III*), No. 08-13 206, slip op. at 1 (Bd. Vet. App. Apr. 14, 2017), and the VA "attempted," but failed, "to obtain" "the language of [Mr. Taylor's] secrecy oath," as "the Edgewood Chemical Biological Center" did not respond to its inquiries, *id.* at 4. The VA and Board instead used "the language of the secrecy [oath] that," it stated, "most [Edgewood Arsenal testing program] participants were required to sign" based on "a January 2009 complaint filed by Vietnam Veterans of America . . . against the [CIA][.]" *Id.*; *see* Compl. at 45*, Vietnam Veterans of Am. v. Cent. Intel. Agency*, N.D. Cal. No. 4:09-cv-00037-CW (Jan. 7, 2009), 2009 WL 412513. The Board maintained that the earliest assignable effective date for service-connected PTSD was February 28, 2007, the date of Mr. Taylor's claim. *Taylor III*, No. 08-13 206, slip op. at 7. The Board reasoned, first, because Mr. Taylor's PTSD diagnosis was based on multiple stressors, "nothing prevented [Mr. Taylor] from filing a claim for PTSD based on those stressors without having to divulge any information regarding the Edgewood experiments"; second, even if Mr. Taylor was under a secrecy oath, he had violated it when he sought medical care prior to 2006; and third, "the governing statute in this case, 38 U.S.C. § 5110," precluded an earlier effective date. *Id.* at 8.[6]

---

[6]    While Mr. Taylor's case was pending before the Board and Veterans Court, "veterans' organizations and individuals who were subjects in [the Edgewood Arsenal] experiments" filed a class action in the U.S. District Court for the Northern District of California ("District Court") "seeking declaratory and injunctive relief against" the DoD, Army, VA, and CIA. *Vietnam Veterans II*, 811 F.3d at 1071; *see id.* (providing that the "class comprises all current or former members of the armed forces, who, while serving in

The case was referred to a panel of the Veterans Court. *See Taylor IV*, 31 Vet. App. at 149. A divided panel affirmed the Board's decision. *Id.* The majority concluded that 38 U.S.C. § 5110(a)(1) prevented assignment of an earlier effective date for Mr. Taylor's service-connected PTSD. *Id.* at 153. The majority explained that, while Mr. Taylor had argued "that equity demands that the [Veterans] Court order [the] VA to establish a process by which he and other veterans like him may establish an earlier effective date for the award of benefits," the Veterans Court's "equitable powers . . . are not so broad." *Id.* (citations omitted). The majority further explained that the "[Veterans] Court and the Federal Circuit have considered whether [§] 5110 is subject to equitable tolling and have found that it is not."

---

the armed forces, were test subjects in [chemical and biological weapons] experimentation programs" (internal quotation marks omitted)); *Vietnam Veterans I*, 2013 WL 6092031, at *1. The Ninth Circuit affirmed the District Court's conclusion that AR 70–25, first promulgated in 1962, imposes on the Army "an ongoing duty . . . to provide former test subjects with newly available information relating to their health," *Vietnam Veterans II*, 811 F.3d at 1071; *see id.* at 1076–78 (discussing the Army's "duty to warn" under AR 70–25), and that "AR 70–25 entitle[d] [the p]laintiffs to medical care for disabilities, injuries or illnesses caused by their participation in government experiments, not only during the course of the experiment but also after the experiment ha[d] ended," *id.* at 1081 (internal quotation marks omitted); *see id.* at 1080–81 (discussing the Army's "duty to provide care" under AR 70–25). The Ninth Circuit further concluded that AR 70–25's duty to warn and duty of care were enforceable against the Army under 5 U.S.C. § 706(1). *Id.* at 1078–79, 1081–82; *see* 5 U.S.C. § 706(1) (providing that "[t]he reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed").

*Id.* at 154 (citing, inter alia, *Andrews v. Principi*, 351 F.3d 1134, 1137–38 (Fed. Cir. 2003); *Noah v. McDonald*, 28 Vet. App. 120, 128–29 (2016)).

In contrast, the dissent would have reversed because all three of the Board's "findings were wrong as a matter of law." *Taylor IV*, 31 Vet. App. at 158 (Greenberg, J. dissenting). First, the dissent said the Board's conclusion that Mr. Taylor was not entitled to an earlier effective date because "nothing prevented [Mr. Taylor] from filing a claim for PTSD based on [his other, non-Edgewood] stressors," *Taylor III*, slip op. at 8, was "basic Board error," "thoughtless," and "a heartless attempt to dehumanize a veteran with an unsubstantiated medical opinion," *Taylor IV*, 31 Vet. App. at 158 (Greenberg, J., dissenting). Second, the Board's conclusion that Mr. Taylor was not entitled to an earlier effective date because he "appear[ed] to have divulged information regarding the Edgewood experiments despite the secrecy oath" in an attempt to get medical care, *Taylor III*, slip op. at 8, was of no apparent relevance, *see Taylor IV*, 31 Vet. App. at 158 (Greenberg, J., dissenting) ("Filing a claim for benefits with the Government under a cloud of prosecution is a wholly different proposition from divulging information to a medical provider."). Third, the dissent "would have held that the Government [wa]s equitably estopped from finding that [Mr. Taylor] filed a claim after the date he was entitled." *Id.* at 161. The dissent explained that "through affirmative misconduct followed by reckless inaction," the Government had "stopped [Mr. Taylor] from filing a successful claim" for benefits, and that, under such "extreme" circumstances, "Congress could not have intended [Mr. Taylor] to be assigned [an] effective date of the date he filed [his claim]." *Id.* at 162. The dissent would have "assigned an effective date of 1971." *Id.*; *see id.* ("[F]iat justicia, ruat caelum, let justice be done whatever be the consequence." (quoting *Somerset v. Stewart*, (1772) 98 Eng. Rep. 499 (K.B.) 509 (Lord Mansfield)).

DISCUSSION

I. Standard of Review and Legal Standard

Our jurisdiction to review decisions of the Veterans Court is defined by statute. *Gazelle v. Shulkin*, 868 F.3d 1006, 1009 (Fed. Cir. 2017). We may "review and decide any challenge to the validity of any statute or regulation or any interpretation thereof" and "interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). "[W]e have authority to decide whether the Veterans Court applied the correct legal standard." *Sneed v. Shinseki*, 737 F.3d 719, 724 (Fed. Cir. 2013) (internal quotation marks, citation, and footnote omitted). Further, "[t]he jurisdictional reach of the Veterans Court presents a question of law for our plenary review." *Maggitt v. West*, 202 F.3d 1370, 1374 (Fed. Cir. 2000). We review the Veterans Court's legal determinations de novo. *Gazelle*, 868 F.3d at 1009.

The Veterans Court is "an Article I tribunal," created under the Veterans' Judicial Review Act of 1988 ("VJRA"), Pub. L. No. 100–687, 102 Stat. 4105 (2000) (codified as amended at 38 U.S.C. §§ 7251–98), "to review Board decisions adverse to veterans." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 432 (2011). Under the VJRA, the Veterans Court has "exclusive jurisdiction to review decisions of the Board," with "power to affirm, modify," remand, "or reverse a decision of the Board[.]" 38 U.S.C. § 7252(a). The Board, in turn, has jurisdiction to review "[a]ll questions in a matter which under [38 U.S.C.] § 511(a) . . . is subject to decision by the Secretary [of Veterans Affairs (the 'Secretary')]," following the Secretary's own review on appeal. *Id.* § 7104(a). The Secretary "decide[s] all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." *Id.* § 511(a); *see id.* § 511(a)–(b) (further providing that "the decision of the Secretary as to any

such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise" except for "matters covered by," inter alia, "[38 U.S.C.] chapter 72"). Veterans are entitled to benefits from the VA if they develop a disability "resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty." 38 U.S.C. §§ 1110 (providing "[b]asic entitlement" for disabilities connected to wartime service), 1131 (providing "[b]asic entitlement" for disabilities connected to "active military . . . service during other than a period of war"); *accord Simmons v. Wilkie*, 964 F.3d 1381, 1383 (Fed. Cir. 2020).

"Estoppel is an equitable doctrine invoked to avoid injustice[.]" *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 59 (1984). It provides relief where a party has reasonably "relied on its adversary's conduct in such a manner as to change his position for the worse." *Id.* (internal quotation marks and citation omitted). Further, for equitable estoppel against the Government, the party must show "some form of affirmative misconduct" by the Government "in addition to the traditional requirements of estoppel." *Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000); *see Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 421 (1990) (explaining that "some type of 'affirmative misconduct' might give rise to estoppel against the Government"); *see also Schweiker v. Hansen*, 450 U.S. 785, 790 (1981) (concluding that "failure to satisfy a 'procedural requirement'" for benefits based on erroneous legal advice from a government employee "d[id] not justify estopping" the Government).

## II. The Veterans Court Erred in Concluding Equitable Estoppel is Unavailable to Mr. Taylor

The Veterans Court denied Mr. Taylor an effective date earlier than his February 2007 informal claim, concluding

that "[i]n the absence of an earlier claim, [38 U.S.C. §] 5110 is clear:  The effective date for the award of benefits is the date of the claim." *Taylor IV*, 31 Vet. App. at 155.  The Veterans Court explained that it lacked authority to apply equitable estoppel against the Government, and thereby grant Mr. Taylor an earlier effective date, because the Veterans Court has "expressly rejected the possibility of equitable estoppel in the absence of an 'explicit statutory grant[]' of that privilege." *Id.* at 155 n.4 (quoting *Burkhart v. Wilkie*, 30 Vet. App. 414, 427 (2019), *aff'd*, 971 F.3d 1363 (Fed. Cir. 2020)) (alteration in original).  The Veterans Court concluded that it could not "use equitable estoppel to authorize payment outside of the requirements set out in [38 U.S.C. §] 5110," as the Supreme Court has "shut the door on all estoppel claims against the [G]overnment . . . when the claimant seeks monetary relief." *Taylor IV*, 31 Vet. App. at 155 n.4 (citing *Richmond*, 496 U.S. at 434).  On appeal, Mr. Taylor argues that the Veterans Court erred in denying him an earlier effective date because, "[b]ut for [his] secrecy [oath], and the risk of incurring the penalty of a court-martial or [criminal] prosecution if he failed to adhere to it, Mr. Taylor would have been able to apply for VA benefits and inform the VA about the disabilities he incurred as a result of his participation" in the Edgewood Arsenal testing program. Appellant's Br. 15–16. Mr. Taylor argues the Veterans Court "should have . . . extend[ed] the utmost 'flexibility' when it considered what due process and procedural protections were required" for his claim. *Id.* at 11.  Because the Veterans Court erred in concluding that equitable estoppel against the Government was unavailable to Mr. Taylor, we reverse and remand.[7]

---

[7]    While Mr. Taylor frames his argument in terms of Due Process protections, *see* Appellant's Br. 8 (arguing that "[t]he secrecy agreement the Army required Mr. Taylor to sign ultimately resulted in a denial of his right to [D]ue

The Veterans Court erred in concluding it lacked authority to hold the Government equitably estopped from denying Mr. Taylor's claim for an earlier effective date. First, the Veterans Court "expressly rejected the possibility of equitable estoppel in the absence of an 'explicit statutory grant[]' of that privilege." *Taylor IV*, 31 Vet. App. at 155 n.4 (quoting *Burkhart*, 30 Vet. App. at 427). This is incorrect. The Veterans Court "cannot invoke equity to *expand* the scope of its statutory jurisdiction." *Burris v. Wilkie*, 888 F.3d 1352, 1361 (Fed. Cir. 2018) (emphasis in original)

---

[P]rocess"), as the Government acknowledges, his underlying argument is equitable, *see* Appellee's Br. 9 (noting that "although Mr. Taylor asserts a constitutional issue . . . the Veterans Court correctly considered his appeal to be a request for equitable relief in the form of an effective date earlier than permitted by statute"). Accordingly, because "we may decide to apply the correct law even if the parties do not argue it, if an issue is properly before this court," we address the question of equitable estoppel in Mr. Taylor's case. *Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed. Cir. 2002) (en banc) (superseded by statute on other grounds by Pub. L. No. 107–330, § 402(a), 116 Stat. 2820, 2832 (2002)); *see Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."). Further, while there may be some merit to Mr. Taylor's Due Process claim, because we resolve Mr. Taylor's case on equitable estoppel grounds, we do not reach his constitutional arguments. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the [c]ourt will decide only the latter.").

(citing, inter alia, *Comm'r of Internal Revenue v. Gooch M. & E. Co.*, 320 U.S. 418, 421 (1943)); *see Bowles v. Russell*, 551 U.S. 205, 214 (2007) (explaining that a court "has no authority to create equitable exceptions to jurisdictional requirements"). This means that the Veterans Court may not create "monetary relief that [claimants] are not otherwise eligible to receive under substantive statutory law." *Burris*, 888 F.3d at 1359; *see Richmond*, 496 U.S. at 426 ("[J]udicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized.").[8] Indeed, "it is well established that '[c]ourts

---

8    For example: The Veterans Court cannot invoke equity to grant extended dependent educational benefits when the claimant has aged-out of eligibility for those benefits. *Burris*, 888 F.3d at 1354, 1360; *see* 38 C.F.R. § 21.3041(g)(1) ("[The] VA cannot grant an extension beyond age [thirty-one] to those children whose period of eligibility ending date . . . is subject to an age limitation"). Neither can the Veterans Court invoke equity to grant additional educational benefits erroneously promised by the VA and for which the claimant is not eligible. *Burris*, 888 F.3d at 1355, 1360; *see* 38 C.F.R. § 21.9550(a) (providing that, generally, "an eligible individual is entitled to a maximum of [thirty-six] months of educational assistance (or its equivalent in part-time educational assistance)"). Nor can the Veterans Court invoke equity to grant "home loan guaranty benefits" that the claimant was otherwise "not eligible for . . . under any . . . statute[]." *Burkhart*, 971 F.3d at 1365 (explaining that, "as the surviving spouse of a veteran without a service-connected disability," the appellant was "not eligible for home loan guaranty benefits under any of the statutes she relies upon," and "the Veterans Court correctly determined that it lacked the power to grant her equitable relief"); *see* 38 U.S.C. § 3701(b)(2) (providing that "[t]he term 'veteran'" for purposes of home loan guaranty benefits "includes the surviving spouse of

of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.'" *INS v. Pangilinan*, 486 U.S. 875, 883 (1988) (quoting *Hedges v. Dixon Cty.*, 150 U.S. 182, 192 (1893)).[9]

This does not mean, however, that the Veterans Court lacks equitable authority absent an "explicit statutory grant." *Taylor IV*, 31 Vet. App. at 155 n.4 (quoting *Burkhart*, 30 Vet. App. at 427). Rather, the Veterans Court may exercise such equitable powers, within the scope of its statutory jurisdiction, to ensure that "all veterans entitled to benefits receive[] them." *Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006); *see Burris*, 888 F.3d at 1361 (recognizing that the Veterans Court has such equitable powers as "required to enable the court to carry out its statutory grant of jurisdiction"). In enacting the VJRA, "Congress legislate[d] against a common law background," *Lofton v. West*, 198 F.3d 846, 850 (Fed. Cir. 1999), leaving common law adjudicatory tools at the Veterans Court's disposal, 38 U.S.C. §§ 511(a)–(b), 7104(a), 7252(a); *see Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) (in considering the availability of "administrative estoppel," noting that "Congress is understood to legislate against a background of common-law adjudicatory principles" when enacting administrative adjudicative systems); *Morgan v. Principi*, 327 F.3d 1357, 1361 (Fed. Cir. 2003)

---

any veteran (including a person who died in the active military, naval, air, or space service) who died from a service-connected disability").

[9]    Instead, Congress has delegated such authority to the Secretary. *See* 38 U.S.C. § 503(a) (providing that, "[i]f the Secretary determines that benefits administered by the [VA] have not been provided by reason of administrative error . . . the Secretary may provide such relief on account of such error as the Secretary determines equitable, including the payment of moneys"); 38 C.F.R. § 2.7 (similar).

("Congress is presumed to legislate against the backdrop of existing law." (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677, 698–99 (1979))). "[W]here [a] common-law principle is well established, . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Astoria Fed. Sav. & Loan*, 501 U.S. at 108 (internal quotation marks and citations omitted). Further, under the "All Writs Act," "all courts established by Act of Congress," including the Veterans Court, "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see Cox v. West*, 149 F.3d 1360, 1363 (Fed. Cir. 1998) (explaining that the All Writs Act "is a residual source of authority to issue writs which are not otherwise provided for by statute").[10]

For example, the Veterans Court may issue an opinion *nunc pro tunc*, when a veteran dies after filing a benefits claim but before the court's opinion issues. *Padgett v. Nicholson*, 473 F.3d 1364, 1368 (Fed. Cir. 2007); *see id.* (explaining that "[i]n enacting the [VJRA], . . . Congress legislate[d] against a common law background," and, therefore, "[i]t would be incongruous if the authority to provide *nunc pro tunc* relief were not available to the Veterans Court"). The Veterans Court may also issue a writ of mandamus to "confine [the VA] to a lawful exercise of its

---

[10] Similarly, while a waiver of sovereign immunity to suit "cannot be implied but must be unequivocally expressed," *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal quotation marks and citation omitted), where, as here, that waiver is clear, 38 U.S.C. §§ 7104, 7252, 7292, use of established common-law principles in adjudication of those suits "amounts to little, if any, broadening of the congressional waiver," *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95 (1990).

prescribed jurisdiction" or to compel the VA to "exercise its authority when it is its duty to do so." *Cox*, 149 F.3d at 1364 (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)); *see* 38 U.S.C. § 7261(a)(2) (providing that the Veterans Court may "compel action of the Secretary unlawfully withheld or unreasonably delayed"); *cf.* 5 U.S.C. § 706(1) (providing that "[t]he reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed"). Further, the Veterans Court may equitably toll time bars based on "misconduct by" the claimant's "attorney" or "a VA official." *Sneed*, 737 F.3d at 723, 726–27 (holding that "the Veterans Court employed an improperly narrow standard for equitable tolling under [38 U.S.C.] § 7266(a)" when it "improperly failed to consider whether attorney misconduct—as opposed to misconduct by a VA official—may constitute a basis for equitable tolling"); *see Henderson*, 562 U.S. at 441 ("Particularly in light of [the pro-veteran] canon, we do not find any clear indication that the 120–day limit [on filing appeals to the Veterans Court] was intended to carry the harsh consequences that accompany the jurisdiction tag."). Moreover, the Veterans Court may "appl[y] equitable estoppel against the Secretary," to prevent him from asserting that an "informal claim [wa]s not a 'cognizable claim for effective date purposes,'" when the VA has failed to fulfill its statutory duty to provide a veteran with notice and an application form for a formal claim, after receiving the informal claim. *Rosenberg v. Mansfield*, 22 Vet. App. 1, 6 (2007) (Kasold, J., concurring), *aff'd sub nom. Rosenberg v. Peake*, 296 F. App'x 53 (Fed. Cir. 2008), (quoting *Servello v. Derwinski*, 3 Vet. App. 196, 200 (1992)); *see Burris*, 888 F.3d at 1361 (explaining that the Veterans Court's equitable authority includes "precluding the VA from asserting on remand that a claimant's informal claim was 'not a cognizable claim for effective-date purposes'" (quoting *Servello*, 3 Vet. App. at 200); *see also Hodge v. West*, 155 F.3d 1356, 1363 (Fed. Cir. 1998) ("[I]n the context of veterans' benefits where the system of awarding compensation is so uniquely pro-claimant,

the importance of systemic fairness and the appearance of fairness carries great weight.").

Indeed, concluding otherwise would be contrary to the Veterans Court's statutory mandate. Congress created the Veterans Court, through the VJRA, "for the [express] purpose of ensuring that veterans were treated fairly by the [G]overnment and to see that all veterans entitled to benefits received them[.]" *Barrett*, 466 F.3d at 1044. "The solicitude of Congress for veterans is of long standing," *United States v. Oregon*, 366 U.S. 643, 647 (1961), and is "plainly reflected in the VJRA, as well as in subsequent laws that place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions," *Henderson*, 562 U.S. at 440 (internal quotation marks and citations omitted). The veterans' benefits system is "not meant to be a trap for the unwary, or a stratagem to deny compensation to a veteran who has a valid claim[.]" *Comer v. Peake*, 552 F.3d 1362, 1369 (Fed. Cir. 2009). Rather, "[t]he VA has a statutory duty to assist veterans in developing the evidence necessary to substantiate their claims," *Henderson*, 562 U.S. at 431–32; *see* 38 U.S.C. § 5103A ("The Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary."); 38 C.F.R. § 3.103(a) (providing that the VA has the "obligation" to "assist a claimant in developing the facts pertinent to the claim and to render a decision which grants every benefit that can be supported in law while protecting the interests of the Government"), and the Veterans Court is held to the "long applied . . . [']canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor,'" *Henderson*, 562 U.S. at 441 (quoting *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220 n.9 (1991)). Accordingly, the Veterans Court erred in concluding it lacked equitable authority absent an express statutory grant.

Second, the Veterans Court held that it "cannot use equitable estoppel to authorize payment outside of the requirements set out in [38 U.S.C. §] 5110" for Mr. Taylor. *Taylor*, 31 Vet. App. at 155 n.4 (citing *McCay v. Brown*, 106 F.3d 1577, 1581 (Fed. Cir. 1997); *see* Appellee's Br. 19–20 (arguing similarly). This was error. The claim filing requirement of 38 U.S.C. § 5110(a)(1) is not jurisdictional and therefore may be subject to equitable considerations, such as waiver, forfeiture, and estoppel. *See Landgraf v. USI Film Prod.*, 511 U.S. 244, 274 (1994) ("[J]urisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties[.]"); *see also Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019) (explaining that a "mandatory" but "non-jurisdictional claim-processing rule" may be "waived or forfeited"); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) (applying the Supreme Court's "general approach to distinguish 'jurisdictional' conditions from claim-processing requirements or elements of a claim," to conclude that a statutory registration requirement was not jurisdictional and therefore subject to estoppel); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 504 (2006) (providing that where a statutory "requirement relates to the substantive adequacy" of a claim, not the court's "subject-matter jurisdiction" it may be waived); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 397 (1982) (explaining that, because a statutory filing requirement was "not a jurisdictional prerequisite to suit in federal court," it was subject to common law equitable doctrines like estoppel). The Supreme Court has "adopted a 'readily administrable bright line' for determining whether to classify a statutory limitation as jurisdictional." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (quoting *Arbaugh*, 546 U.S. at 516). "We inquire whether Congress has 'clearly state[d]' that the rule is jurisdictional; absent such a clear statement, we have cautioned, 'courts should treat the restriction as non[-]jurisdictional in character." *Id.* (quoting *Arbaugh*, 546 U.S. at 515–16); *see Reed Elsevier*, 559 U.S. at 166 ("[T]he

jurisdictional analysis must focus on the legal character of the requirement, which we discern[] by looking to the condition's text, context, and relevant historical treatment." (internal quotation marks and citations omitted)).

Section 5110(a)(1) provides no such clear jurisdictional statement. Rather, it provides without reference to the Veterans Court's adjudicatory capacity, that "unless specifically provided otherwise in [38 U.S.C. Chapter 51], the effective date of an award based on an initial claim, or a supplemental claim, of compensation . . . shall not be earlier than the date of receipt of application therefor." 38 U.S.C. § 5110(a)(1). The Supreme Court has repeatedly "urged that a rule should not be referred to as jurisdictional," "even if important and mandatory," "unless it governs a court's adjudicatory capacity[.]" *Henderson*, 562 U.S. at 435; *cf. United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015) (explaining that "even when the time limit is important (most are) and even when it is framed in mandatory terms (again, most are) . . . Congress must do something special, beyond setting an exception-free deadline" to make a time-bar jurisdictional). "Nor does [38 U.S.C. § 5110(a)(1)'s] placement within the VJRA provide such an indication." *Henderson*, 562 U.S. at 439. It "appears in a separate provision" from the Veterans Court's jurisdictional grant, *Arbaugh*, 546 U.S. at 515; *see* 38 U.S.C. § 7252 (providing the "[j]urisdiction" of the Veterans Court); *Henderson*, 562 U.S. at 439 (noting that where "Congress elected not to place" a limitation "in the VJRA subchapter entitled 'Organization and Jurisdiction,'" it indicated the limitation was not jurisdictional), with various exceptions under which a claimant may be entitled to an effective date earlier than that provided in 38 U.S.C. § 5110(a)(1), *see* 38 U.S.C. §§ 5110(b), (c), (g); *Reed Elsevier*, 559 U.S. at 165 ("It would be at least unusual to ascribe jurisdictional significance to a condition subject to these sorts of exceptions."); *see United States v. Cotton*, 535 U.S. 625, 630 (2002) (noting that subject-matter jurisdiction "can never

be forfeited or waived"). To the extent any question remains, "the singular characteristics of the review scheme that Congress created for the adjudication of veterans' benefits claims," *Henderson*, 562 U.S. at 440, namely Congress's "long standing" solicitude for veterans "plainly reflected in the VJRA" and the "long applied" canon of construction "that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor," *id.* at 440–41 (internal quotation marks and citations omitted), support the conclusion that Congress did not intend for 38 U.S.C. § 5110(a)(1) to have the "consequences that accompany the jurisdiction tag," *id.* at 441. Accordingly, 38 U.S.C. § 5110(a)(1) is not jurisdictional and the Veterans Court erred in concluding that 38 U.S.C. § 5110(a)(1) is not subject to common law equitable doctrines like estoppel.[11]

Third, the Veterans Court concluded that the Supreme Court has "shut the door on all estoppel claims against the [G]overnment . . . when the claimant seeks monetary relief." *Taylor*, 31 Vet. App. at 154 n.4 (citing *Richmond*, 496

---

[11] As discussed at note 13, *infra*, our current precedent prohibits equitable tolling of the time limits in 38 U.S.C. § 5110(b)(1). *See Andrews*, 351 F.3d at 1138 (explaining that "principles of equitable tolling" do not apply to § 5110(b)(1), because "§ 5110 does not contain a statute of limitations"). Whatever the merits of this precedent, it has no impact on our conclusion regarding the availability of equitable estoppel in this context. *See Nutraceutical*, 139 S. Ct. at 714 (providing that "a nonjurisdictional claim-processing rule" may be "waived or forfeited by an opposing party" even if it is not subject to equitable tolling, because unlike waiver and forfeiture, "[w]hether a rule precludes equitable tolling turns not on its jurisdictional character but rather on whether the text of the rule leaves room for such flexibility").

U.S. at 424); *see* Appellee's Br. 19 (similar). This misreads *Richmond*. As we have explained, "*Richmond* [does not] stand[] for the proposition that equitable estoppel will not lie against the government for any monetary claim"—its "holding is not so broad." *Burnside-Ott Aviation Training Ctr., Inc. v. United States*, 985 F.2d 1574, 1581 (Fed. Cir. 1993). "*Richmond* is limited to 'claim[s] for the payment of money from the Public Treasury *contrary to a statutory appropriation.*'" *Id.* (quoting *Richmond*, 496 U.S. at 424) (emphasis in original). *Richmond* stands for the well-established proposition that an "agency is not estopped from reaching the correct result, even when an agency representative gave incorrect information to an employee"—it "does not excuse an agency's violation of its duty, or apply an agency's error in order to deny [a claimant's] just entitlement." *Johnston v. Off. of Pers. Mgmt.*, 413 F.3d 1339, 1342 (Fed. Cir.), *opinion modified on reconsideration*, 430 F.3d 1376 (Fed. Cir. 2005); *see Falso v. Off. of Pers. Mgmt.*, 116 F.3d 459, 460 (Fed. Cir. 1997) (explaining that "the [G]overnment cannot be estopped from denying benefits that are not permitted by law even where the claimant relied on the mistaken advice of a government official or agency."); *cf. Wilber Nat. Bank of Oneonta, N.Y., v. United States*, 294 U.S. 120, 123 (1935) ("Undoubtedly, the general rule is that the United States are neither bound nor estopped by the acts of their officers and agents in entering into an agreement or arrangement to do or cause to be done what the law does not sanction or permit.").

Mr. Taylor's "claim[] of entitlement" is not, however, "contrary to statutory appropriations." *Burnside-Ott Aviation*, 985 F.2d at 1581. Rather, Mr. Taylor is entitled to service-connected disability benefits. *See Taylor IV*, 31 Vet. App. at 149 (noting that Mr. Taylor was awarded benefits for PTSD and for TDIU). He suffers from PTSD as a result of an in service injury—specifically, as "a cumulative response to his participation as a human subject in the Edgewood Arsenal experiments and subsequent re-

traumatization in Vietnam." J.A. 62 (VA Initial Evaluation for PTSD); *see* J.A. 64 (July 2007 Rating Decision), 73 (October 2007 Rating Decision); *see also Taylor IV*, 31 Vet. App. at 150; *Taylor II*, 2013 WL 3283487, at \*2. Congress has appropriated the funds and authorized their payment to Mr. Taylor. *Richmond*, 496 U.S. at 424 ("[T]he payment of money from the Treasury must be authorized by a statute."); *see* 38 U.S.C. § 1110 (providing that the "United States will pay to any veteran" compensation for "disability resulting from personal injury suffered . . . in line of duty . . . in the active military . . . service, during a period of war," following "discharged or released under conditions other than dishonorable"); *Simmons*, 964 F.3d at 1383 (explaining that "[v]eterans are entitled to compensation from the [VA]" where they meet the requirements of 38 U.S.C. § 1110). Mr. Taylor "ha[s] not asked for anything that Congress did not intend for the statute to provide and for which [he] ha[s] not met all of the [substantive] requirements." *Brush v. Off. of Pers. Mgmt.*, 982 F.2d 1554, 1563 (Fed. Cir. 1992); *see id.* (concluding that *Richmond* did not preclude monetary relief where "all of the substantive qualifying requirements were met by the [appellant], and the only further act provided by the statute for the protection of both parties was omitted by the [G]overnment"); *see also Martin v. O'Rourke*, 891 F.3d 1338, 1341 (Fed. Cir. 2018) ("'Veteran's disability benefits are nondiscretionary, statutorily mandated benefits,' and a veteran is entitled to such benefits if he or she satisfies the eligibility requirements." (quoting *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009)). Rather, he seeks an earlier effective date—his date of discharge—through a "long recognized" common-law adjudicatory tool, estoppel. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 684 (2014) (citing *Wehrman v. Conklin*, 155 U.S. 314, 327 (1894)); *see Astoria Fed. Sav. & Loan*, 501 U.S. at 108 ("Congress is understood to legislate against a background of common-law adjudicatory principles[.]"); *see also Petrella*, 572 U.S. at 685 (explaining that "estoppel does not undermine Congress' [timing]

prescription[s], for [estoppel] rests on misleading [conduct], whether engaged in early on, or later in time"); *cf.* 38 U.S.C. § 5110(b)(1) (authorizing an "effective date" as early as "the day following the date of the veteran's discharge or release if application therefor is received within one year from such date of discharge or release"). "[T]he Appropriations Clause is no bar to recovery in a case like this one, in which 'the express terms of a specific statute' establish 'a substantive right to compensation[.]'" *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 198 n.9 (2012) (quoting *Richmond*, 496 U.S. at 432); *see Burnside-Ott*, 985 F.2d at 1581 (explaining that "neither the holding nor analysis in *Richmond* is applicable" where the appellant does not "claim entitlement contrary to statutory eligibility criteria").[12]

The Veterans Court similarly reads *McCay* as precluding use of equitable estoppel "to authorize payment outside of the requirements set out in [38 U.S.C. §] 5110" in all cases. *See Taylor*, 31 Vet. App. at 154 n.4 (citing *McCay*, 106 F.3d at 1581); *see also* Appellee's Br. 19 (similar). This extends *McCay* past the limits of its language. In *McCay*, a panel of this court concluded that equitable estoppel was not available against 38 U.S.C. § 5110(g). *McCay*, 106 F.3d at 1581–82. *McCay* stands for the proposition that, "[a]lthough equitable estoppel is available against the [G]overnment, it is not available to grant a money payment

---

[12]  *Cf.* 38 C.F.R. § 3.816 (creating an exception to 38 U.S.C. § 5110 by providing special "effective-date rules," including retroactive disability benefits for certain veterans exposed to Agent Orange, as "required by orders of a United States district court in the class-action case of *Nehmer v. United States Department of Veterans Affairs*, No. CV–86–6160 TEH (N.D. Cal.)"); *Nehmer v. U.S. Veterans Admin.*, 32 F. Supp. 2d 1175 (N.D. Cal. 1999), *aff'd sub nom. Nehmer v. Veterans' Admin. of Gov't of United States*, 284 F.3d 1158 (9th Cir. 2002).

where Congress has not authorized such a payment or the recipient [is not] qualif[ied] for such a payment under applicable statutes." *Id.* at 1581 (citing *Richmond*, 496 U.S. at 426); *see Burris*, 888 F.3d at 1359; *Burnside-Ott Aviation*, 985 F.2d at 1581. *McCay* expressly declined to "decide if the [Veterans Court] is devoid of equity powers in all cases," because whatever those powers, "there [was] no need to reverse or to vacate and remand" in Mr. McCay's case because his equitable estoppel claim did not "present[] a valid ground for relief." *McCay*, 106 F.3d at 1581.

Further, *McCay* presented a meaningfully different case than that at issue here: In *McCay*, the veteran did not "immediately file for disability benefits" because "[a]t th[e] time" of diagnosis, "VA regulations denied connection between Agent Orange [exposure] and" his disability, "soft tissue sarcoma," *id.* at 1579, and he believed "any . . . application would have been futile," *id.* at 1581; *see* 38 C.F.R. § 3.311a(d)(2) (1985) (precluding service-connection based on dioxin exposure for soft tissue sarcomas). The Government did not prevent Mr. McCay from applying for benefits to which he was otherwise entitled; he elected to not apply for benefits because, under existing law, he was not qualified. *See* 38 U.S.C. §§ 1110, 1131; *Shedden v. Principi*, 381 F.3d 1163, 1167 (Fed. Cir. 2004) (explaining that service connection—"a causal relationship between the present disability and the disease or injury incurred or aggravated during service"—is required for disability benefits). Subsequently, Congress created a presumptive service connection for soft tissue sarcoma for veterans exposed to Agent Orange in Vietnam, *McCay*, 106 F.3d at 1579 (citing 38 U.S.C. § 1116 (1994)); *see* 38 U.S.C. § 1116(a)(2)(B), and Mr. McCay was granted benefits effective to "one year prior to his application filing date" in keeping with 38 U.S.C. § 5110(g), *McCay*, 106 F.3d at 1579; *see* 38 U.S.C. § 5110(g) (providing that, when a disability benefit is awarded pursuant to a liberalizing "Act or administrative issue, the effective date of such award" shall not "be retroactive for

more than one year from the date of application therefor or the date of administrative determination of entitlement, whichever is earlier"); *Spencer v. Brown*, 17 F.3d 368, 372 (Fed. Cir. 1994) (explaining that a "'liberalizing' law," is "one which brought about a substantive change in the law creating a new and different entitlement to a benefit"). That is, unlike Mr. Taylor, Mr. McCay's equitable estoppel claim did not "present a valid ground for relief," *McCay*, 106 F.3d at 1581; *see Richmond*, 496 U.S. at 421 (noting the narrow "possibility . . . that some type of 'affirmative misconduct' might give rise to estoppel against the Government"), but rather sought retroactive benefits prior to the statute that created his entitlement, *McCay*, 106 F.3d at 1581–82; *see Richmond*, 496 U.S. at 426 ("[J]udicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized."); *see also* 38 U.S.C. § 5110(g); S. REP. NO. 87-2042 (1962), *reprinted in* 1962 U.S.C.C.A.N. 3260, 3260–61 (explaining that, "[g]enerally, the [proposed revisions to effective date provisions] may be described as liberalizing," with 38 U.S.C. § 5110(g) specifically "provid[ing], for the first time," a "uniform rule" "governing the effective dates of liberalizing laws or administrative issues" that "would, in many cases, obviate the necessity of a potential beneficiary filing a specific claim for the new benefit").

This is not to say that 38 U.S.C. § 5110(a)(1) is without meaning or effect. "Equitable relief is not granted as a matter of course[.]" *Salazar v. Buono*, 559 U.S. 700, 714 (2010); *see Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959) ("[I]n the federal courts equity has always acted only when legal remedies were inadequate[.]"). In nearly all cases challenging the effective date of a veteran's disability benefits, 38 U.S.C. § 5110(a)(1) and its enumerated exceptions will be dispositive. *See Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) ("Although [the All Writs] Act empowers federal courts to fashion extraordinary remedies when the need arises, it

does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate."). Equity remains a high bar—an "extraordinary remed[y]" predicated on "exceptional circumstances"—that most claimants will not meet. *Id.* The Veterans Court still lacks jurisdiction to craft equitable monetary relief for benefits that "have not been provided by reason of administrative error" or to beneficiaries who have "suffered loss as a consequence of reliance upon a [VA] determination . . . of eligibility or entitlement to benefits, without knowledge that it was erroneously made," 38 U.S.C. §§ 503(a), (b)—that authority is expressly retained by the Secretary, 38 U.S.C. § 503; 38 C.F.R. § 2.7; *see Burris*, 888 F.3d at 1358. Further, like all courts, the Veterans Court lacks authority to use "the equitable doctrine of estoppel [to] grant respondent a money remedy that Congress has not authorized." *Richmond*, 496 U.S. at 426; *see Burris*, 888 F.3d at 1359.

However, here there is no administrative error to correct, no extra-statutory relief sought. Rather, the Government has affirmatively and intentionally prevented veterans such as Mr. Taylor from seeking medical care and applying for disability benefits to which they are otherwise entitled under threat of criminal prosecution and loss of the very benefits sought. *Zacharin*, 213 F.3d at 1371 (explaining that, for equitable estoppel to apply against the Government, a party must show "some form of affirmative misconduct . . . in addition to the traditional requirements of estoppel"); *see* S. REP. NO. 94-755, at 418 (providing that breach of the Edgewood Arsenal secrecy oath would leave subjects "liable to punishment under the [UCMJ]"); 10 U.S.C. §§ 793 (UCMJ, providing that "[g]athering, transmitting or losing defense information" may result in fines, ten years imprisonment, or both), 892 (UCMJ, providing that "violat[ion] or fail[ure] to obey any lawful general order or regulation . . . shall be punished as a court-martial may direct"); 38 U.S.C. § 6104(a) (providing that a veteran

may "forfeit all accrued or future gratuitous benefits under laws administered by the Secretary" if "guilty of mutiny, treason, sabotage, or rendering assistance to an enemy of the United States or of its allies"). The Government has failed in its ongoing duty to warn affected veterans of the medical consequences of its chemical and biological weapons testing program and its duty to provide medical care to those veterans—two regulatory requirements upon which its authorization to conduct such a testing program was predicated. *See Vietnam Veterans II*, 811 F.3d at 1076–78 (discussing the Army's failure in its ongoing "duty to warn" Edgewood Arsenal volunteers under AR 70–25), 1080–81 (discussing the Army's failure in its "duty of care" to Edgewood Arsenal volunteers under AR 70–25); *see also Vietnam Veterans I*, 2013 WL 6092031, at *2 (explaining that the Government was authorized to test chemical and biological weapons on human subjects pursuant to AR 70–25). Under such circumstances, when the Government finally permits affected veterans to apply for disability benefits, the Veterans Court is within its authority to hold the Government equitably estopped from asserting that those veterans are not entitled to an earlier effective date because they filed their claims too late. "The applicable principle is fundamental and unquestioned. He who prevents a thing from being done may not avail himself of the nonperformance which he has himself occasioned[.]" *R.H. Stearns Co. of Bos., Mass., v. United States*, 291 U.S. 54, 61 (1934) (internal quotation marks and citation omitted). Therefore, it was within the Veterans Court's authority to hold the Government estopped from asserting 38 U.S.C. § 5110(a)(1) against Mr. Taylor's claim for an earlier effective date.[13]

---

[13] The Veterans Court also concluded that it lacked the authority to equitably toll 38 U.S.C. § 5110(b)(1). *Taylor IV*, 31 Vet. App. at 154 (citing, inter alia, *Andrews*, 351

Further, Mr. Taylor is entitled to equitable estoppel against the Government. *See Dixon v. Shinseki*, 741 F.3d 1367, 1373 (Fed. Cir. 2014) ("[W]here adoption of a particular legal standard dictates the outcome of a case based on undisputed facts, we may address that issue as a

F.3d at 1137–38). The Veterans Court is correct that, under our current case law, as noted above, equitable tolling is unavailable to Mr. Taylor. We agree that, in *Andrews*, a prior panel of this court concluded that 38 U.S.C. § 5110(b)(1) could not be equitably tolled, because "§ 5110 does not contain a statute of limitations." *Andrews*, 351 F.3d at 1138. We think *Irwin* compels a contrary conclusion. Under *Irwin*, "the same rebuttable presumption of equitable tolling applicable" to "time requirements" in "suits against private defendants . . . appl[ies] to suits against the United States." *Irwin*, 498 U.S. at 95–96. Contrary to *Andrews*, we understand the one-year filing requirement in 38 U.S.C. § 5110(b)(1) to function as a statute of limitations, because it limits the relief available to veterans seeking service-connected disability benefits. *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 15 n.6 (2014); *Young v. United States*, 535 U.S. 43, 49 (2002). Further, we do not see any "good reason" in the statute's text or context "to believe that Congress did not want equitable tolling to apply." *United States v. Brockamp*, 519 U.S. 347, 350 (1997); *see, e.g.*, *Barrett*, 466 F.3d at 1044 ("Congress' intent in crafting the veterans benefits system [wa]s to award entitlements to a special class of citizens, those who risked harm to serve and defend their country," with the "entire" system "imbued with special beneficence from a grateful sovereign."). However, as a panel, we are bound by *Andrews*, as were Mr. Taylor and his counsel when framing their arguments to us. Accordingly, we hold that the Veterans Court did not err in concluding that, under our current case law, equitable tolling is not available, even on the compelling facts presented by Mr. Taylor.

question of law." (citation omitted)).  Equitable estoppel
provides relief where a party has reasonably "relied on its
adversary's conduct in such a manner as to change his po-
sition for the worse." *Heckler*, 467 U.S. at 59 (internal quo-
tation marks and citation omitted); *see CIGNA Corp. v.
Amara*, 563 U.S. 421, 441 (2011) (explaining that "equita-
ble estoppel forms a very essential element in . . . fair deal-
ing").  "There is no dispute that, during service," Mr. Taylor
"volunteered to participate in chemical agent exposure
studies at the Edgewood Arsenal." *Taylor IV*, 31 Vet. App.
at 149.  Nor is there any dispute that Mr. Taylor suffers
from PTSD as a result of these studies and is, therefore,
entitled to service-connected disability benefits. *Taylor IV*,
31 Vet. App. at 149–50; *Taylor II*, 2013 WL 3283487, at *2;
J.A. 61, 64 (July 2007 Rating Decision), 73 (October 2007
Rating Decision).[14]  It is also undisputed that Mr. Taylor

---

[14]   The Board suggested that Mr. Taylor was not enti-
tled to an earlier effective date because his PTSD diagnosis
was based on multiple stressors, such that "nothing pre-
vented [him] from filing a claim for PTSD based on those
stressors without having to divulge any information re-
garding the Edgewood experiments." *Taylor III*, slip op.
at 8.  As articulated by the dissent below, this "is basic
Board error and thoughtless.  It is nothing more than a
heartless attempt to dehumanize a veteran with an unsub-
stantiated medical opinion." *Taylor IV*, 31 Vet. App. at 158
(Greenberg, J., dissenting).  A Board decision premised on
its own unsubstantiated medical opinion is contrary to law;
Board decisions must be "upon consideration of all evidence
and material of record," not uninformed speculation.  38
U.S.C. § 7104(a); *see* 38 C.F.R. § 3.159(c)(4)(i) ("A medical
examination or medical opinion is necessary if the infor-
mation and evidence of record does not contain sufficient
competent medical evidence to decide [a disability benefits]
claim."); *see also* 38 C.F.R. § 3.159(c)(4)(i) ("Competent
medical evidence means evidence provided by a person who

"signed an oath vowing not to disclose his participation in or any information about the study, under penalty of court martial or prosecution," *Taylor IV*, 31 Vet. App. at 149; *see* S. REP. NO. 94-755, at 418 (providing that breach of the secrecy oath "w[ould] render [Mr. Taylor] liable to punishment under the provisions of the [UCMJ]"), and that, despite the Government's duty to warn and duty to provide medical care to Edgewood Arsenal testing program participants, *Vietnam Veterans II*, 811 F.3d at 1076–78, 1080–81,[15] neither the VA nor the DoD gave Mr. Taylor notice that he was allowed to seek medical care and apply for veterans benefits until June 2006, *see Taylor IV*, 31 Vet. App. at 149. It is also undisputed that Mr. Taylor did not apply for veterans benefits until after receipt of that notice, in February 2007. *Id.* at 155 (noting that Mr. Taylor "does not dispute that he did not file a claim until February 2007").[16] To do otherwise would have exposed him to risk

---

is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions."); *see also Colvin v. Derwinski*, 1 Vet. App. 171, 175 (1991), *overruled on other grounds by Hodge*, 155 F.3d at 1356.

[15] The Veterans Court states that Mr. Taylor cannot assert equitable estoppel in a VA proceeding because his secrecy oath was with the DoD. *See Taylor IV*, 31 Vet. App. at 153 n.2. This is inapposite—"[t]here is privity between officers of the same government." *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402 (1940); *cf. id.* at 403 ("Where a suit binds the United States, it binds its subordinate officials.").

[16] The Board concluded, without legal support, that Mr. Taylor was not entitled to an earlier effective date because Mr. Taylor "appears to have divulged information regarding the Edgewood experiments despite the secrecy oath" in an attempt to get medical care. *Taylor III*, slip op. at 8 (citing J.A. 58). If the Board means to suggest that Mr. Taylor may not assert equitable estoppel against the

of prosecution, 10 U.S.C. §§ 793, 892, and loss of the very
benefits sought, 38 U.S.C. § 6104(a).[17] The Government is,

---

Government under a doctrine of unclean hands, the Board
is incorrect. *See McKennon v. Nashville Banner Pub. Co.*,
513 U.S. 352, 360 (1995) (noting the "maxim" that a party
"who [has] engaged in [its] own reprehensible conduct in
the course of the transaction at issue must be denied equi-
table relief because of unclean hands"). "Filing a claim for
benefits with the Government under a cloud of prosecution
is a wholly different proposition from divulging infor-
mation to a medical provider." *Taylor IV*, 31 Vet. App. at
158 (Greenberg, J., dissenting). Further, the Board ne-
glects that, at the time Mr. Taylor was trying unsuccess-
fully to obtain medical care, the Government—specifically,
the Army—was failing in its legal obligation "to provide for-
mer test subjects," such as Mr. Taylor, "with medical care
for any injuries or diseases that were proximately caused
by [the] Army experiments in which they participated." *Vi-
etnam Veterans II*, 811 F.3d at 1080; *see id.* (explaining that
AR 70–25 authorizes "'all necessary medical care for injury
or disease that is a proximate result of [volunteers'] partic-
ipation in research'").

[17] Mr. Taylor appears to not have been alone in his
understanding of the Edgewood Arsenal secrecy oath. *See
Vietnam Veterans I*, 2013 WL 6092031, at *6 (quoting the
DoD's 2011 notice to Edgewood Arsenal program volun-
teers, stating that such notice was necessary because
"[s]uch oaths . . . reportedly inhibited veterans from dis-
cussing health concerns with their doctors or seeking com-
pensation from the [VA] for potential service-related
disabilities"). Indeed, as early as 1979, in the face of
"mounting public concern about the long-term effects of
such experiments," the Army's General Counsel "concluded
that, as a policy matter, some type of notification program
is necessary" with "the legal necessity for a notification pro-
gram . . . not open to dispute." *Vietnam Veterans II*, 811

therefore, estopped:  It can neither assert that 38 U.S.C. § 5110(a)(1) precludes Mr. Taylor's claim for an earlier effective date, nor can it deny Mr. Taylor disability benefits retroactive to when he would have filed his claim had the Government not prevented him.  *CIGNA Corp.*, 563 U.S. at 441 (explaining that equitable estoppel "operates to place the person entitled to its benefit in the same position he would have been" had his reliance not been misplaced (citation omitted)); *see* 38 U.S.C. § 5110(b)(1) (authorizing an "effective date" as early as "the day following the date of the veteran's discharge or release if application therefor is received within one year from such date of discharge or release").

If equitable estoppel is ever to lie against the Government, it is here—to preserve the "interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." *See Heckler*, 467 U.S. at 60–61.  "Men must turn square corners when they deal with the Government." *Rock Island, A. & L. R. Co. v. United States*, 254 U.S. 141, 143 (1920).  So too must the Government, mutatis mutandis.  *United States v. Nixon*, 418 U.S. 683, 696 (1974) ("So long as [a] regulation remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.").  "The government's interest in veterans cases is not that it shall win, but rather that justice shall be done, that all veterans so entitled receive the benefits due to them." *Barrett*, 466 F.3d at 1044.  Mr. Taylor kept his word and did what was required; it is time for the Government to do the same.

---

F.3d at 1073.  The VA and DoD nonetheless waited until 2006 and 2011, respectively, to notify Mr. Taylor and others of their rights to medical care and disability benefits. *Taylor IV*, 31 Vet. App. at 149.

CONCLUSION

We have considered the Government's remaining arguments and find them unpersuasive. We reverse the Veterans Court and hold the Government equitably estopped from asserting 38 U.S.C. § 5110(a)(1) against Mr. Taylor's claim. We remand to the Veterans Court to enter judgment accordingly and to remand to the Board for determination of effective date, rating(s) as appropriate, and award of service-connected disability benefits to Mr. Taylor. The Judgment of the U.S. Court of Appeals for Veterans Claims is

**REVERSED AND REMANDED**

COSTS

Costs to Mr. Taylor.